Okay, we'll go ahead and proceed to our second argument of the morning. It comes in Appeal 2518.24, Hartnett v. Jackson National Life Insurance Company. Mr. Dabowski, nice to see you. Nice to see you too, Your Honor. It's nice to see all of you. Good morning and may it please the Court. Just hold one second just so we can get the table set here. Okay, whenever you're ready. Good morning and may it please the Court, Counsel. My name is Mark Dabowski. I represent the plaintiffs and appellants in this case. There are two questions that we raise in our appeal. The first is the applicability of the Illinois regulation that mandates that if home health care is covered, then it's improper to condition coverage on seeing a patient in a nursing home first. The second issue is the good faith and fair dealing issue that we raised. We maintain that the regulation is applicable in this case, and if this Court finds that it's applicable, that will likely be dispositive of the entire case. The policy very clearly includes home health care. It is in the alternative plan of care provision, but it explicitly mentions home health care. In preparing for the argument today, a colleague suggested an analogy to me, and the analogy is that if Illinois law were to require that all cars contain seatbelts, it would be illegal to sell a car without a seatbelt because the customer failed to purchase the premium safety package. That's essentially what we're dealing with in this case, too. The defendant cast blame on the plaintiff, or on Lorraine Hartnett, for not buying a comprehensive policy. She didn't buy a comprehensive policy, but she bought a policy that did have a provision that would provide for home health care, and that mandated the applicability of the Illinois regulation, which was adopted before this policy went into effect, and is explicitly on point in mandating that there be coverage for this home health care. Correct me if I'm wrong here, but I read the contractual provision, the policy provision, to essentially require both sides to get together, the insured and the insurer, to get together and talk about whether whatever home care is contemplated would be both medically acceptable and would fall within certain cost parameters and what have you. Does that still leave it, in your judgment, squarely within the regulation? I believe it does, since there's a mention of home health care, and the regulation doesn't say, this only applies if the insured buys a comprehensive policy or if there are any other conditions. Since the policy explicitly says home health care, the regulation... Because it... Okay, so your position is that because it at least contemplates the possibility that there would be home health care, even if it's conditioned, and even if those conditions require satisfaction before it actually occurs. Correct. But that also provides a segue to our second point on the issue of good faith and fair dealing. We cited case law that talked about how the alternative plan of care provision is intended to give discretion to fashion coverage where it might not explicitly exist. And that discretion has to be exercised reasonably and in good faith. And our position is that Jackson National failed to do that. The circumstances presented here were extreme and just totally unpredictable as far as what was going on in the United States. The United States was faced with a worldwide pandemic. And as part of that pandemic, people were dying at an excess rate in nursing homes. Dr. Sheridan made it very clear that he would not allow his patient to go into a nursing home. Given her age of 94, her underlying heart condition, her underlying pulmonary condition, her musculoskeletal conditions, that she would be the likely first victim if she contracted COVID. And the family made an effort to try to get Jackson National to agree to cover this under the circumstances. And they got a response, absolutely not. We're Sheridan requesting an alternative plan of care. And when they got it, they ignored it. The point that we made in our briefs is a really important one, which is that no insured should ever have to put themselves at risk of very serious illness or death as a condition of receiving coverage under a policy. And that's exactly what Jackson National did to Lorraine Hartnett. They told her, yeah, you can have your coverage. You meet the terms of coverage. We're not going to contest that. But we're only going to provide that coverage if you go into a nursing home and you risk your life. And that's really where the rubber meets the road here. And we cited cases from the disability insurance context, which are not dissimilar. And the one in particular, the Downs case, specifically involved COVID-19 and a physician who risked her life, who would have risked her life if she had to go back to work and deal with patients who were sick. In preparing for the oral argument today, I realized that I miscited the Downs case. I think I put that the page number was 873. It's 973. It's not a hallucinated case. Don't worry about that. But I just wanted to clarify that. When I went to reread the case and looked it up, lo and behold, it wasn't there. But I knew there was such a case. But the cases are exactly on point here, that this is a failure to exercise good faith in fair dealing. Mrs. Hartnett purchased that policy, paid premiums on that policy for 23 years. And in her time of need, Jackson National wasn't there. And for that reason, we maintain that the judgment of the court below should be overturned. Very well. You'll have some time in rebuttal that you reserved. Let's hear from Jackson Life, Sanderson. Nice to see you. May it please the court. Wendy Anderson on behalf of Appley Jackson National Life Insurance Company. This court should affirm the district court's grant of summary judgment in favor of Jackson. The district court correctly held that Jackson did not violate the Illinois regulation at issue because the policy that Ms. Hartnett purchased, a nursing care policy, did not provide guaranteed benefits for home health care and community-based services. The district court also correctly held that Jackson did not breach the policy in bad faith or breach the duty of good faith and fair dealing by declining Ms. Hartnett with an alternative plan of care benefit. So I'd first like to address why this court should affirm the district court's holding that the regulation doesn't apply. Now, the regulation at issue provides that a long-term care insurance policy may not, if it provides benefits for home health care or community care services, limit or exclude benefits by either first or simultaneously requiring nursing or institutional care in a setting before home health care services are covered. Now five separate independent reasons support the district court's holding that the regulation doesn't apply. First, on its face, the regulation only applies to long-term policies that provide benefits for home health care or community care services. This policy at issue indisputably did not. She did not purchase a policy that guarantees those home health care or community-based services. Rather, she purchased a nursing care policy with a discretionary alternative plan of care benefit that is expressly predicated on two contractual preconditions. Now the district court correctly explained that unlike nursing home care, home and community-based settings, the regulations implementing both Medicare and Medicaid also expressly provide that nursing care is different than home and community-based care. Now the second reason why the regulation does not apply, and this is evidenced by the policy's application, is that Ms. Harnett had the option to purchase a more comprehensive policy that did include home health care and community-based services. So she and her husband elected to purchase a nursing care policy, which on the face of the application, and that's in the record, the appendix of 43, contained no home and community-based benefits. So if this court were to find that the regulation applies to a nursing care policy, this policy at issue it would convert that policy to a comprehensive health care policy at a much higher premium than she paid. What do you say to Mr. Dabosky's point that, okay, fair enough, but the alternative plan of care benefit provision could operate if the conditions were satisfied to result in Ms. Harnett, with the agreement of your client, receiving medical care in her home and that's sufficient enough to show that the policy includes a home care component? It is not sufficient, Your Honor, because by definition, alternative plan of care is defined as qualified long-term nursing care services that would enable recovery at home in order to end confinement in a nursing care facility. So by definition, APOC only comes into play once there is already existing benefits under the policy that are provided in a nursing care facility. Now, neither of those prerequisites... And you get that from the definition in paragraph B of the definitional provision of the policy? Your Honor, that... As to how, well, I think everyone's called, APOC is defined? That is correct, Your Honor. Yeah. And that is in the record at the appendix 24. It expressly provides alternative plan of care means long-term care services that may enable you to end confinement in a nursing care. In your comprehensive policy, is the receipt of benefits at all conditioned? In other words, what conditions have to be met before the comprehensive policy would take effect and give benefits? So there are several benefits available under a comprehensive care. There are nursing care services. There are assisted living facility benefits. Yeah, that's not my question, though. My question is, what are the conditions that have to be met? The conditions for home health care and community-based services are that the policyholder is under treatment by a licensed care professional. There is no requirement that there be a confinement in a nursing care facility. I understand. That's what significantly distinguishes this policy. Does the company have any discretion as to whether or not home care is suitable under the comprehensive policy? So long as it is prescribed by a licensed care professional, no, it does not. It is a guaranteed benefit under the policy. It is a vested benefit, and that's what distinguishes this policy. It is a discretionary benefit. Is it the only thing that distinguishes the two policies? No, there are other things. There are other things. There are, Your Honor. And it is worth noting that the comprehensive policy that Ms. Harnack could have elected to purchase, but she didn't, also provides an alternative plan of care provision. Now, that provision does not require confinement in a nursing facility, but there are conditions for that. But this policy, the comprehensive policy, does guarantee home health care and community care services. The third reason why the regulation does not apply is because home and health care services under APAC, any that are provided under an alternative plan of care, are not a guaranteed benefit. The district court correctly found, and this court should affirm, that the policy only guarantees Ms. Harnack the opportunity to negotiate an alternative plan of care that is both, one, agreed to by her, her physician, and Jackson, and two, it is more cost efficient than the benefit she's already receiving under the policy in a nursing care facility. There are several provisions in the policy which make this abundantly clear. The declarations page, unlike the guaranteed benefits for nursing care, bed reservation, and assisted living facilities, there is no dollar amount for benefits on the policy's declaration for alternative plan of care. As I've stated... Congressman, there's some portions of your brief where what your client argues is essentially that, hey look, these are the terms and conditions of the policy, this is the way the regulation works from our perspective, and so we really didn't have a choice here. We just applied it by its letter. But that, I don't think, is to suggest that your client lacked all the facts of the matter. In other words, if Jackson Life had recognized that Ms. Harnack was in a real predicament here, she is 94 years old, she fell and broke her hip, her physician is saying you do not want to go into a nursing care facility right now with COVID, you should get home health care. Jackson Life is not suggesting that it would have committed some kind of illegal act to have applied the policy to have allowed in the situation that Mr. Dabosky, I think quite appropriately describes as dire for somebody in Ms. Hartnett's position, to have said, well look, policy doesn't allow this, but we will allow home health care up to the X dollar amount in these really extenuating circumstances. There's no suggestion that would have been illegal? There is no suggestion, Your Honor, that it would have been illegal. In fact, Jackson has never taken that position. The position is, though, is that the only discretion that Jackson has is when she meets the definition of APOC, that it is a secondary benefit to end confinement in a nursing care facility. Once that prerequisite is required and she is satisfied and she's receiving benefits under the policy, then there is discretion. There's discretion in the agreement. Yeah, and you're just describing in terms of when a contractual obligation were to kick in. That's right, and this is exactly why there is no independent claim for breach of the duty of good faith and fair dealing. Illinois law does not recognize a standalone claim for breach of the duty of good faith and fair dealing. You can only have such a claim in the event that there's discretion within the policy. Now, and I know I'm over my time, but I'd really like to address this. The appellants in their reply brief and even in their opening brief argue that Jackson breached the duty of good faith and fair dealing by not even considering the alternative plan of care that they contend was requested by Jackson. But what's important here is that that contention is not supported by the factual record upon which they rely. When Jackson requested Ms. Harnett and her physician, Dr. Sheridan, to provide an alternative plan of care, it was under the wrong impression, the mistaken impression that she was already confined to a nursing care facility. Now, this is in the record at 35-13, page 30 of 33. And Jackson, this is October 22nd, Jackson writes to Mr. Sheridan, please provide us with a written alternative plan of care to explain why it is medically acceptable for the insured to end confinement in a nursing care facility and continue recovery at home. Okay. I think we got your position. Thank you for that added clarification. Appreciate it. We'll hear from Mr. Dabosky. You have some rebuttal time. Thank you. For these reasons, we request this court to affirm the district court's decision. Thank you. You're welcome. The district court stated that Jackson's conduct was both heartless and disappointing. Jackson certainly had the discretion to consider benefits based on the unique and just, you know, the unpredictable circumstances occasioned by the pandemic. They had a number of options that they could have taken. They could have negotiated for a lower daily rate. They could have required additional medical documentation. They could have imposed conditions or monitoring of the home health care. They could have done anything other than a complete refusal. It's the complete refusal to cover Mrs. Hartnett at the time that she needed care after paying premiums for 23 years that we maintain was a violation of the covenant of good faith and fair dealing. And the court should reverse the decision of the court below. Thank you. Mr. Dabosky, you're quite welcome. Thanks to you. Senator Sengen, thanks to you. We'll take the appeal under advisement.